UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.08-80820-Civ-Hurley/Hopkins [lead action]
[Consolidated with Case No. 08-cv-81185]



ARTHUR SMITH and SUE SMITH,

                Plaintiffs,

vs.                                                   Case No. 08-cv-80820

POWDER MOUNTAIN, LLC, et al.,

                Defendants.
_____/

FDB II ASSOCIATES LP,

                Plaintiff,

vs.                                                   Case No. 08-cv-81185

STONE CREEK INVESTMENT CO., LLC, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION REGARDING FDB'S MOTION FOR ENTRY OF FINAL JUDGMENT ON WRITS OF GARNISHMENT (DE 272); PFP'S MOTION TO DISSOLVE WRITS OF GARNISHMENT (DE 274); AND PFP'S RENEWED MOTION TO DISSOLVE WRITS OF GARNISHMENT (DE 296)

**THIS CAUSE** has come before this Court upon an Order referring all motions to aid in execution of the judgment to the undersigned United States Magistrate Judge for final disposition. (DE 270). However, because the parties have not consented to magistrate jurisdiction, and given the dispositive nature of the pending garnishment motions, this Court will issue its determination by way of a Report and Recommendation.[1]

---

[1] *See Parks By and Through Parks v. Collins*, 761 F.2d 1101, 1106 (5th Cir. 1985)(even though parties had consented to magistrate jurisdiction of original action, without specific consent to the subsequent garnishment proceeding, magistrate judge lacked authority to rule).

## BACKGROUND

The lawsuit underlying the instant garnishment proceeding resulted from a purported fraudulent investment scheme whereby Defendants sought to solicit investors for a planned Utah mountain resort. Over the course of the lawsuit, the parties resolved their respective claims. The pertinent settlement agreement for purposes of this proceeding was entered on March 5, 2010, in the form of a final consent judgment in favor of Plaintiff FDB II Associates LP ("FDB") and against Defendant Arnold P. Mullen in the amount of one million dollars ($1,000,000.00). (DE 257).

On June 24, 2010, in an effort to collect on its judgment, FDB moved this Court for a writ of garnishment against Fidelity Investments for any accounts held by Arnold Mullen and his wife, Shirley. (DE 260). On July 1, 2010, the Clerk of Court issued the requested writ of garnishment. (DE 261).[2] On July 2, 2010, FDB moved this Court for additional writs of garnishment against Fidelity (and other financial institutions), including, but not limited to, four specific Fidelity account numbers ending as follows: 5048-1; 5072-1; 5218 and 42404. (DE 262). The Clerk of the Court issued these writs of garnishment on July 6, 2010. (DE 263-265).

On July 8, 2010, Fidelity filed an Answer to the writs of garnishment identifying numerous Fidelity accounts in Mullen's name, some held jointly with other individuals, as well as some partnership accounts in which Mullen "may have an interest." (DE 268). Fidelity's Answer suggests that it was served with the second writ on July 6, 2010 because it repeatedly

---

[2] On July 7, 2010, Shirley Mullen filed an objection to any garnishment of their Fidelity account number ending in 8743, claiming that the account was held as a tenancy by the entirety and was, therefore, exempt from garnishment. (DE 266). Counsel for FDB subsequently agreed to release this account from its writ of garnishment. (DE 269).

references that date in providing the valuation for each account. (DE 268).

In its Answer, Fidelity noted that "[m]any of the accounts disclosed above are the subject of a June 30, 2010 Agreed Order" entered by a Florida state court in a separate civil lawsuit against Mullen, to which FDB was not a party. *See Paul & Phyllis Fireman Charitable Foundation v. Mullen,* Case No. 2009CA002404XXXXMBAO (Fla. Cir. Ct.)(DE 268, Exhibit A). Fidelity's Answer further provided that

> [a]s reflected in the Agreed Order, the [State] Court directed that the funds and assets held in the applicable accounts that are subject to these Garnishments be transferred to an account of the Plaintiffs in the case where the Agreed Order was entered. Before those transfers could be made, Fidelity received the Garnishments in this case . . .[t]he Court and the parties should be aware that the Paul & Phyllis Fireman Charitable Foundation, Paul Fireman Individually and PFP Asset Recovery LLC claim an ownership interest in all of the Fidelity accounts referenced in the Agreed Order . . .

(DE 268 at ¶3, 4).

On July 14, 2010, Fidelity filed an Amended Answer, removing the account Mullen and his wife held as a tenancy by the entireties from the list of garnished accounts. Fidelity further noted that it had restricted only two of Mullen's accounts, which together contained assets sufficient to satisfy FDB's judgment.[3]

Presently before the Court is Plaintiff FDB's motion for entry of final judgment on the Fidelity writs of garnishment. (DE 272). According to FDB, the state court Order is subordinate to its federal court judgment, so the garnished funds should be released to FDB to satisfy its judgment before any assets are transferred in accordance with the state court Order.

---

[3] The restricted accounts are #5072, a joint account held with Betty Mullen valued at $3,459,960.13, and #5030, a joint account held with Geoffrey M. Mullen valued at $234,290.66. (DE 271 at ¶5).

3

Also pending before the Court is a motion by third-party PFP Asset Recovery, LLC ("PFP") filed on July 20, 2010. (DE 274). PFP is the assignee of Paul Fireman, a plaintiff in the state court action. PFP's motion seeks to dissolve the writs of garnishment issued in favor of FDB in the instant case. (DE 274). According to PFP, it is entitled to the funds in the restricted Fidelity accounts because Mullen, who was convicted of stealing millions of dollars from his former employer, Paul Fireman, entered into a restitution agreement on June 11, 2010, whereby Mullen and his family members agreed to transfer those accounts and others to PFP. This agreement was subsequently entered as an Order by the state court on June 30, 2010. Therefore, PFP contends that the accounts FDB seeks to garnish are owned by PFP and, based on the transfer agreement, were no longer owned by Mullen at the time the writs of garnishment were issued. PFP also claims that because the assets in these accounts were stolen by Mullen, they never legally belonged to him and, therefore, they are not properly subject to garnishment for debts owed by him. (DE 274 at page 7).

FDB counters that the judgment issued by the District Court "takes priority over an unperfected assignment which . . . does not comport with basic UCC requirements regarding interests in securities." (DE 278 at page 2). FDB relies on Article 8 of Florida's version of the Uniform Commercial Code (UCC), which specifically addresses investment securities. FDB argues that Mullen's property interest in the Fidelity accounts constituted a "security entitlement" under Fla. Stat. § 678.1021(1)(q), which can only be acquired in one of three ways under Fla. Stat. § 678.5011(2), and according to FDB, PFP failed to follow any of these three methods for obtaining a security entitlement from Fidelity. (DE 278 at pages 8-10).

In the alternative, FDB states that under Fla. Stat. §77.16(1), this Court must conduct a

4

jury trial to resolve the competing claims to the Fidelity assets, complete with discovery by forensic accountants to determine the source of the money in the Fidelity accounts. (DE 278 at pages 18-19).

On August 12, 2010, PFP filed reply papers, essentially claiming that if UCC Article 8 applies, then PFP is a "protected purchaser" under Fla. Stat. §678.5101, against whom, an adverse claim may not be asserted. (DE 280 at page 3).

On October 14, 2010, this Court conducted a telephone conference with counsel to discuss setting a discovery schedule which would allow the parties to ascertain the source of the funds in the Fidelity accounts. During the conference, counsel for PFP requested that before discovery commenced, the Court determine which party had the burden to trace their funds into the restricted Fidelity accounts. The Court agreed to give counsel an opportunity to brief the burden of proof issue.

Accordingly, on November 5, 2010, PFP filed a Renewed Motion to Dissolve the Writs of Garnishment (DE 296); FDB filed its response on November 29, 2010 (DE 299); and PFP filed a reply on December 13, 2010 (DE 301).

These motions are now ripe for this Court's consideration.

## DISCUSSION

Pursuant to the Federal Rules of Civil Procedure, execution of a federal court judgment "must accord with the procedure of the state where the court is located . . ." Fed. R. Civ. P. 69. Accordingly, this Court will follow Florida's execution of judgment procedures. *See Bernal v. All American Inv. Realty, Inc.*, 2009 WL 586010, *4 (S.D. Fla. March 6, 2009). Chapter 77 of

the Florida Statutes addresses the procedure for the issuance and enforcement of writs of garnishment (*see* Fla. Stat. §77.01 *et seq.*), and thus, the Court will consider these provisions in assessing FDB's claims.

In assessing PFP's claim that it is a "protected purchaser" with an unassailable interest in the accounts, the Court will consider Chapter 678 of the Florida Statutes, which represents Florida's codification of Article 8 of the UCC. As one court has noted, "[h]aving adopted Article 8 of the Uniform Commercial Code, Florida shelters 'protected purchasers' of securities from the claims of creditors . . ." *Travelers Cas. & Surety Co. v. Whitehouse-Franklin, L.L.C.*, 2007 WL 247894 (6th Cir. Jan. 31, 2007)(*citing* Fla. Stat. Ann. § 678.3031(1).

Here, FDB acknowledges that PFP would qualify as a protected purchaser if it can establish that it (1) gave value for Mullen's security entitlement, (2) had no notice of FDB's claim, and (3) had control over the security entitlement. Specifically, the relevant Florida statute provides that

> an action based on an adverse claim to a financial asset or security entitlement . . . may not be asserted against a person who purchases a security entitlement . . . from an entitlement holder if the purchaser gives value, does not have notice of the adverse claim, and obtains control.

Fla. Stat. § 678.5101(1).

Notably, FDB does not dispute that PFP gave value in exchange for Mullen's security entitlements in the form of releases and that PFP did not have notice of FDB's adverse claim at the time it entered into the restitution and transfer agreement with Mullen and his family. (DE 278 at pages 12-13).

Thus, the parties' only dispute is whether PFP had control of the Fidelity accounts on the

day FDB's garnishment was served on Fidelity. If PFP had control over the securities accounts so as to render it a "protected purchaser," then FDB's lien could not attach to the accounts because Mullen (the judgment debtor) was no longer the entitlement holder.[4] If PFP did not have control over the securities accounts at the time the writs of garnishment were served, then FDB's lien would attach to the accounts and take priority. *See generally Travelers Cas. & Surety Co. v. Whitehouse-Franklin, L.L.C.*, 2007 WL 247894 (6th Cir. Jan. 31, 2007)(Court considered whether third party was a protected purchaser on the day plaintiff served its writ of garnishment).

According to the Florida Statutes, "a purchaser has 'control' of a security entitlement if: the securities intermediary has agreed that it will comply with entitlement orders originated by the purchaser without further consent by the entitlement holder . . ." Fla. Stat. §678.1061(4)(b).

Here, FDB contends that PFP does not qualify as a protected purchaser because it never had "control" over the two restricted Fidelity accounts. According to FDB, "Article 8 'control' requires a control agreement under which the securities intermediary [Fidelity] unconditionally agrees to accept entitlement orders from the purchaser [PFP] . . ." (DE 299 at page 8). FDB contends that the control agreement "must demonstrate that the intermediary has agreed to accept entitlement orders 'emanating solely' from the purchaser." (DE 299 at page 8)(*citing First Nat. Bank of Palmerton v. Donaldson, Lufkin & Jenrette Securities Corp.*, 1999 WL 163606 (E.D. Pa. March 19, 1999). FDB maintains that "nothing in the correspondence between Fidelity and PFP even suggests that Fidelity was prepared to accept any orders issued solely by PFP" and

---

[4] Service of FDB's writ of garnishment on Fidelity automatically created a lien on any of Mullen's property then in Fidelity's possession. *See* Fla. Stat. § 77.06 (service of a writ of garnishment "creates a lien" which attaches to the debtor's property in the garnishee's possession at the time of service).

"nowhere has Fidelity implied that it is obligated to take orders emanating solely from PFP . . . [t]hus, Fidelity had not recognized PFP as the controller of the Accounts . . ." (DE 299 at pages 8, 10). In sum, FDB argues that PFP's claim fails because there is no evidence that Fidelity ever "undertook affirmative duties to PFP." (DE 278 at page 11).

Prior to the filing of PFP's reply papers (DE 301), the Court might have been inclined to agree with FDB. However, in light of an affidavit attached to PFP's reply papers, provided by Richelle Kennedy - a vice president and associate general counsel with FMR LLC (a/k/a Fidelity Investments), the Court finds that FDB's position is no longer tenable. The Kennedy Affidavit unequivocally states that

> On June 30, 2010, in light of the Order furnished to Fidelity, **Fidelity agreed to act according to PFP's entitlement orders**, regarding the Subject Accounts **without Mullen's consent**. On June 30, 2010, in light of the Order furnished to Fidelity, Fidelity understood that PFP could direct a transfer of the contents of the Subject Accounts to itself without Mullen's consent.

See Kennedy Aff. at ¶ 7-8 (emphasis added).

Ms. Kennedy's affidavit makes clear that as of June 30, 2010, before any of FDB's writs of garnishment had been served on Fidelity, Fidelity had "acknowledged PFP's interest and indicated it would obey PFP's instructions regarding the Accounts." (DE 301 at page 2). Thus, the evidence establishes that prior to receiving any writ of garnishment, Fidelity had, indeed, entered into an agreement with PFP, whereby it agreed act on orders from PFP alone. *Cf. Travelers Cas. & Surety Co. v. Whitehouse-Franklin, L.L.C.*, 2007 WL 247894 (6th Cir. Jan. 31, 2007)(Court declined to give protected purchaser status to party that never had control over securities; since securities were in debtor's control when writ of garnishment was served,

8

judgment creditor was entitled to garnish the assets); *In re Richards,* 336 B.R. 722, 731 (Bankr. E.D. Va. 2004)(court found no control where defendant never obtained intermediary's consent to treat it as the entitlement holder). Accordingly, this Court finds that PFP had control over the restricted Fidelity accounts as of June 30, 2010.[5]

Given that PFP qualified as a protected purchaser before FDB perfected its interest by serving its writ of garnishment on Fidelity, PFP's interest in the Fidelity accounts is superior to FDB's.

As for FDB's contention that under Fla. Stat. §77.16(1) it is entitled to have a jury resolve the competing claims to the Fidelity assets, this Court disagrees. Under Fla. Stat. 77.07, once PFP rejected as untrue FDB's claim that Mullen owned accounts at Fidelity, the burden shifted to FDB to prove the truth of that statement, which was the basis for the Clerk of Court's issuance of the writs of garnishment. If FDB failed to prove that Mullen owned accounts at Fidelity capable of being garnished, then the writs must be dissolved. *See Marshall-Shaw v. Ford,* 755 So.2d 162, 163 (Fla. Dist. Ct. App. 2000)("When a party moves to dissolve a writ of attachment or garnishment, the party opposing the motion must prove the grounds on which the writ issued . . ."); *Doug Sears Consulting, Inc. v. ATS Services, Inc.,* 752 So.2d 668, 669 (Fla. Dist. Ct. App. 2000)("Section 77.07 requires the trial court to dissolve a writ of garnishment 'unless the petitioner proves the grounds upon which the writ was issued . . .'")

To the extent that Sections 77.07 and 77.16 state that issues raised in a motion to dissolve

---

[5] Notably, although "the intermediary must 'specifically agree' to allow the secured party to issue entitlement orders, the statute does not require that the intermediary agree in writing." *First Nat. Bank of Palmerton v. Donaldson, Lufkin & Jenrette Securities Corp.,* 1999 WL 163606, *3 (E.D. Pa. March 19, 1999)(*citing* Title 13, section 8106(d)(2), UCC Comment 5).

a writ of garnishment "shall be tried," this Court finds that Section 77.07 does not trump the Federal Rules of Civil Procedure, and in particular, Rule 56 which provides that where there is "no genuine dispute as to any material fact," judgment should be entered as a matter of law. Indeed, this hierarchal scheme is reaffirmed by Rule 69, which directs use of state court procedures to execute on a judgment, but notes an important exception, namely, that a "federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). *See also Milliken & Co. v. Haima Group Corp.*, 654 F.Supp.2d 1374, 1376-78 (S.D. Fla. Aug. 18, 2009)(court engaged in summary judgment analysis before concluding that disputed issues of fact warranted a trial; evidently agreeing that "[d]espite the fact that Fla. Stat. § 77.16(1) suggests that a jury trial is required . . . Florida Garnishment statutes are still subject to all applicable Federal Rules of Civil Procedure (including Rule 56) [and] when there are no genuine issues of material fact, summary judgment is appropriate").

Here, in light of PFP's status as a protected purchaser, this Court can discern no outstanding disputed question of material fact that would entitle FDB to a jury trial. Therefore, this Court recommends that PFP's motions to dissolve the Fidelity writs of garnishment be granted as a matter of law.

## RECOMMENDATION TO THE DISTRICT COURT

Based on the foregoing, this Court **RECOMMENDS** that the District Court **DENY** FDB's Motion for Entry of Final Judgment on its Writs of Garnishment (DE 272) and **GRANT** PFP's Motions to Dissolve the Writs of Garnishment (DE 274, 296).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* Statutory Time-Periods Technical Amendments Act of 2009, H.R. 1626, sec. 6, amending 28 U.S.C. § 636(b)(1) to provide that " . . . within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). *See also* Fed. R. Civ. P. 72(b) (2009) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy.") Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE and SUBMITTED** in Chambers this 26 day of January, 2011, at West Palm Beach in the Southern District of Florida

*/s/ James M. Hopkins*

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to: Counsel of Record

Joseph G. Santoro, Esq.
Gunster, Yoakley & Stewart, P.A.
777 S. Flagler Drive
Suite 500 East
West Palm Beach, FL 33401
*Counsel for Third Party PFP Asset Recovery, LLC*